## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **KELLY WALKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:19-cv-00128** |
| | ) | |
| **JESSICA GARNER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Kelly Walker, an inmate at the Trousdale Turner Correctional Center in Hartsville, Tennessee, filed this *pro se* civil rights action under 42 U.S.C. § 1983 against Jessica Garner and Johnathan Topper. (Doc. No. 1.) He also filed an application to proceed in this Court without prepaying fees and costs. (Doc. No. 2.) The complaint is before the Court for an initial screening, as required by the Prison Litigation Reform Act ("PLRA").

## I.       Application to Proceed as a Pauper

Because Plaintiff has now paid the filing fee (Doc. No. 7), his application to proceed *in forma pauperis* (Doc. No. 2) will be denied as moot.

## II.      Initial Review

Under the PLRA, the Court must screen and dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c)(1). The Court must also construe a *pro se* complaint liberally, United States v. Smotherman, 838 F.3d 736, 739 (6th Cir. 2016) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)), and accept the factual allegations

as true unless they are entirely without credibility. <u>Thomas v. Eby</u>, 481 F.3d 434, 437 (6th Cir. 2007) (citing <u>Denton v. Hernandez</u>, 504 U.S. 25, 33 (1992)).

## A.    Factual Allegations

Plaintiff alleges that he had a disciplinary hearing set for October 10, 2018, and that his designated "inmate advisor" was fellow inmate Herman Phillips. (Doc. No. 1 at 5–6.) The day before the scheduled hearing, Phillips informed Plaintiff that the hearing was rescheduled for October 11. (<u>Id.</u>) Plaintiff reported to the Disciplinary Board for his hearing at 7:30 A.M. on October 11. (<u>Id.</u>) At that point, an unnamed inmate advisor told Plaintiff that his hearing was, in fact, held on October 10. (<u>Id.</u>) Plaintiff presented his "pass" to the inmate advisor, who took the pass to Defendant Garner, a sergeant and disciplinary chairman at Trousdale Turner. (<u>Id.</u>) The inmate advisor then relayed to Plaintiff Garner's statement that she "found [Plaintiff] guilty already," and that Plaintiff would "need to raise that on appeal." (<u>Id.</u>)

Plaintiff alleges that Garner had an inmate advisor named Perry Kirkman present on October 10 "to move farther with [Plaintiff's] disciplinary hearing" without Plaintiff present. (<u>Id.</u>) Kirkman did not "complete[] the investigation of [Plaintiff's] allegations or claims," nor did he "prepare for [Plaintiff's] defense." (<u>Id.</u> at 5–6.) According to Plaintiff, his "Class A" disciplinary charge should have been dismissed because another inmate named "Dean Shawn" accepted responsibility for it. (<u>Id.</u> at 6.) But because Plaintiff was not present at the hearing, he could not present this defense. (<u>Id.</u>) Plaintiff also alleges that his October 10 hearing took place without a 24-hour notice. (<u>Id.</u>)

Defendant Johnathan Topper is a Captain at Trousdale Turner. (<u>Id.</u>) At the October 10 hearing, Plaintiff alleges, Defendant Garner allowed Topper "to testify as the employee when in actuality he did not witness anything." (<u>Id.</u>) The disciplinary conviction "had an outcome [on

Plaintiff's] parole hearing," resulted in "a higher custody level" placement for eighteen months, and led to Plaintiff being restricted from seeing his family for three months. (Id.)

Plaintiff requests the expungement of his disciplinary conviction, another disciplinary hearing, and another parole hearing. (Id. at 7.)

**B.     Standard of Review**

To determine whether a prisoner's complaint "fails to state a claim on which relief may be granted" under the PLRA, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009)). An assumption of truth does not, however, extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94 (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

**C.     Discussion**

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009) (quoting Sigley v. City of Parma Heights, 437 F.3d 527, 533 (6th Cir. 2006)). Here, the Court construes Plaintiff's allegations as asserting both a procedural and substantive due process claim related to his disciplinary hearing and conviction.

### 1.    Procedural Due Process

The Fourteenth Amendment provides that prisoners "may not be deprived of life, liberty, or property without due process of law." Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citations omitted). To state a procedural due process claim, Plaintiff must show that (1) he had a protected liberty or property interest; (2) he was deprived of that interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of that interest. Janinski v. Tyler, 729 F.3d 531, 541 (6th Cir. 2013) (citing Women's Med. Prof'l Corp. v. Baird, 438 F.3d 595, 611 (6th Cir. 2006)). Thus, as a threshold matter, the Court must determine what, if any, "constitutionally protected liberty interest" is at stake. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). "[T]he question of what process is due is relevant only if the inmate establishes a constitutionally protected interest." Pickelhaupt v. Jackson, 364 F. App'x 221, 224 (6th Cir. 2010) (citing Wikinson, 545 U.S. at 224).

Prisoners have a more narrow set of protected interests than individuals who are not incarcerated, as they are "subject to restrictions imposed by the nature of the regime in which they have been lawfully committed." Wolff, 418 U.S. at 556 (citations omitted). "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." Wilkinson, 545 U.S. at 221–22 (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)). A liberty interest may arise, however, in avoiding conditions of confinement that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 223 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). Here, Plaintiff alleges that his disciplinary conviction adversely impacted his conditions of confinement in three ways: affecting his parole hearing, leading to three months of restricted visitation, and resulting in a

punishment of eighteen months at a "higher custody level." For the following reasons, however, the Court concludes these conditions do not implicate a constitutionally protected liberty interest.

First, the effect of Plaintiff's disciplinary conviction and increased custody level on his parole hearing did not give rise a protected liberty interest. "In Tennessee, a grant of parole is discretionary. No provision of Tennessee law 'requires the parole board to deny parole in the face of a misconduct report or to grant parole in its absence.'" Newell v. Ford, No. 16-1003, 2016 WL 4597631, at *5 (W.D. Tenn. Sept. 2, 2016) (quoting Sandin, 515 U.S. at 487); see also Bradley v. Evans, No. 98-5861, 2000 WL 1277229, at *8 (6th Cir. Aug. 23, 2000) (citing Meachem v. Fano, 427 U.S. 215, 229 n.8 (1976)) ("The disciplinary sanction in this case only prevented Bradley from being *eligible* for parole. . . . [A] grant of parole in Tennessee is wholly discretionary.").

Second, the "withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline . . . is not a dramatic departure from accepted standards for conditions of confinement." Overton v. Bazzetta, 539 U.S. 126, 137 (2003) (citing Sandin, 515 U.S. at 485); see also Bazzetta v. McGinnis, 430 F.3d 795, 803–05 (6th Cir. 2005) (discussing Overton and Sandin before concluding that even a prison's policy resulting in a permanent ban on visitation does not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause"). Thus, Plaintiff's alleges short-term visitation restriction was not "atypical and significant" under Sandin.

And third, as to Plaintiff's initial placement in a "higher custody level," the Sixth Circuit has held that classification to an increased security level "does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security

classification." Williams v. Lindamood, 526 F. App'x 559, 563 (6th Cir. 2013) (quoting Harbin-Bey v. Rutter, 420 F.3d 571, 577 (6th Cir. 2005)).

As to Plaintiff's ongoing placement in a higher custody level, however, "prolonged or indefinite confinement" in more restrictive conditions "may implicate due process concerns." Bishawi v. Ne. Ohio Corr. Ctr., 628 F. App'x 339, 344 (6th Cir. 2014) (citing Wilkinson, 545 U.S. at 224). But in this case, Plaintiff's placement is not indefinite. At the time he filed the complaint, Plaintiff was subject to this security level for about four months, and the total duration of this placement is scheduled to be eighteen months. This duration, alone, is insufficient to implicate a protected liberty interest. See Powell v. Washington, 720 F. App'x 222, 227 (6th Cir. 2017) ("Powell's six-month confinement in administrative segregation is insufficient to constitute an atypical and significant hardship and therefore does not implicate his due process rights."); McMann v. Gundy, 39 F. App'x 208, 210 (6th Cir. 2002) (holding that five months in administrative segregation was "not excessive or unusual"); but see Harden-Bey v. Rutter, 524 F.3d 789, 792–93 (6th Cir. 2008) (finding that placement in confinement for three years without a definite end-point may be "atypical and significant").

To be sure, "the duration of his confinement, at some point, may [] give[] rise to a protected liberty interest, such that some form of review [is] constitutionally required." See Williams, 526 F. App'x at 563 (citing Harris v. Caruso, 465 F. App'x 481, 484 (6th Cir. 2012)). But Plaintiff does not allege that he has been denied periodic review of his security status. See Patton v. Hall, No. 18-5235, 2018 WL 7569342, at *1 (6th Cir. Aug. 7, 2018) (holding that an inmate's "confinement does not implicate his due process rights because, at the time of filing his complaint, he had only been in administrative segregation for eight months and he failed to allege that he is not receiving the required reviews of his status"). Moreover, Plaintiff does not provide any detail

about how his "higher custody level" differs from his previous conditions. See Williams, 526 F. App'x at 562–63 (holding that an inmate had "not established that the change in the conditions of his confinement was 'atypical and significant,'" in part, because the inmate had not produced facts "establishing the ordinary conditions of confinement"); Joseph v. Curtin, 410 F. App'x 865, 869 (6th Cir. 2010) (holding that an inmate had "not demonstrated that a liberty interest was implicated" because his "complaint [did] not include any allegations about" his new security classification level "to suggest that it imposes an atypical and significant hardship").

In sum, Plaintiff has not satisfied his required threshold burden—that is, taking all of his allegations as true, Plaintiff has not established that the challenged disciplinary proceedings resulted in conditions that "impose[] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. For this reason, Plaintiff fails to state a procedural due process claim.

## 2.     Substantive Due Process

To state a substantive due process claim, Plaintiff must allege conduct by prison officials "so reprehensible as to 'shock the conscience' of the court." Rimmer-Bey v. Brown, 62 F.3d 789, 791 n.4 (6th Cir. 1995) (citations omitted). This is a "virtually insurmountable uphill struggle." Id. Here, Plaintiff alleges that Defendant Garner rescheduled and conducted his disciplinary hearing without him, and that Defendant Topper testified at the hearing despite not "witness[ing] anything." Plaintiff does not, however, provide any specific allegations about the context of his disciplinary charge, or the content of Topper's testimony. At most, Plaintiff alleges that the charge should have been dismissed because another inmate accepted responsibility for it. These allegations, even if true, are not so shocking or egregious as to overcome the extraordinarily high standard Plaintiff must meet to state a substantive due process claim. See Mann v. Stump, No.

1:17-cv-310, 2017 WL 1502759, at *4 (W.D. Mich. Apr. 27, 2017) ("[T]he fact that an officer may have charged the wrong prisoner is not shocking or egregious conduct.").

## III. Conclusion

Because Plaintiff paid the filing fee, his application to proceed *in forma pauperis* (Doc. No. 2) is **DENIED AS MOOT**. And for the reasons stated above, Plaintiff fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c)(1). Accordingly, this action is **DISMISSED**.

For the same reasons that the Court dismisses this action, the Court **CERTIFIES** that any appeal in this matter would not be taken in good faith. 28 U.S.C. § 1915(a)(3). The Court, therefore, will not grant Plaintiff leave to proceed *in forma pauperis* on any appeal.

The Clerk shall enter judgment in accordance with Federal Rule of Civil Procedure 58.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE